**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAHID KHAN, | Case No. 08-1398 SC |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S MOTION TO DISMISS, GRANTING |
| JONATHAN SCHARFEN, Acting Director, United States Citizenship and Immigration Services, | DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING |
| Defendant. | PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

This matter comes before the Court on the Motion to Dismiss, or in the Alternative, Motion for Summary Judgment ("Motion") filed by the defendant Jonathan Scharfen, Acting Director of the United States Citizenship and Immigration Services (the "Government").  Docket No. 35.  Plaintiff Shahid Khan ("Plaintiff" or "Khan") opposed the Government's Motion and filed his own Cross-Motion for Summary Judgment.  Docket No. 37 ("Opposition").  The Government filed a Reply in support of its Motion and in opposition to the Plaintiff's Cross-Motion.  Docket No. 39.  For the following reasons, the Government's Motion to Dismiss is DENIED, the Government's alternative Motion for Summary Judgment is GRANTED, and Plaintiff's Cross-Motion for Summary Judgment is DENIED.

**United States District Court**
For the Northern District of California

## II.  <u>BACKGROUND</u>

Plaintiff is a citizen of Pakistan.  On September 24, 2001, the Board of Immigration Appeals ("BIA") granted Plaintiff asylum. First Am. Compl. ("FAC"), Docket No. 31, Ex. A.  On January 10, 2003, Plaintiff applied for an adjustment of status to become a lawful permanent resident.  FAC ¶ 5, Ex. B.  On his application for adjustment of status, Plaintiff indicated that he had been an active member in the 1990's of Jamaat-i-Islami, a "democratic opposition party in Pakistan." <u>Id.</u> Ex. B.  During the subsequent four years, the United States Citizenship and Immigration Services ("USCIS") took no action on Plaintiff's application.  In April 2007, Plaintiff brought suit in this Court seeking an injunction to compel adjudication of his adjustment application.  <u>See</u> <u>Khan v. Gonzalez</u> ("<u>Khan I</u>"), No. 08-1398 SC, Docket No. 1.

On August 13, 2007, USCIS issued its notice of intent to deny Plaintiff's application for adjustment of status.  FAC ¶ 7, Ex. D. Plaintiff timely responded to the notice, challenging certain of the factual allegations on which USCIS had relied.  <u>Id.</u> Ex. D.  In December 2007, USCIS again issued a notice of intent to deny Plaintiff's application, and Plaintiff again responded.  <u>Id.</u> ¶ 8, Ex. E.

On March 3, 2008, USCIS denied Plaintiff's application.  <u>Id.</u> Ex. F.  In the denial, USCIS described the violent activities of a group called Hizbul Mujahadeen, alleged to be a subgroup of the Jamaat-i-Islami party.  <u>Id.</u> Due to the activities of Hizbul Mujahadeen, USCIS concluded that Jamaat-i-Islami met the definition of an undesignated terrorist organization (also known

2

as a "Tier III" organization) under 8 U.S.C. §
1182(a)(3)(b)(vi)(III).  Id.  The letter went on to explain why
Plaintiff was not admissible:

> You stated on your Form I-589 (the attachment)
> "I had attended numerous JI meetings while I
> was in high school, and was familiar with the
> party's goals and aspirations".  Upon joining
> the JI I assumed the role of an active worker
> in the Mardaan College chapter of the JI".
> "My primary duty was to paste JI posters in
> the areas surrounding the collehe and on the
> collehe campus itself."
>
> Due to the activities of the Jamaat-i-Islami
> meets the current definition of an
> undesignated terrorist organization at INA
> section 212(a)(3)(B)(vi)(III).  The violent
> activities of the Jamaat-i-Islami match those
> described in section 212(a)(3)(B)(iv) and
> 212(a)(3)(B)(iii).  Because your act(s) of
> material support of the Jamaat-i-Islami was
> voluntary, you are inadmissible under INA
> section 212(a)(3)(B)(i)(I).
>
> Accordingly, your application must be and
> hereby is denied.  The regulations do not
> provide for an appeal to this decision.

Id.[1]  The Court dismissed Plaintiff's first suit shortly after
USCIS adjudicated his application.  Khan I, Docket No. 17.
Plaintiff then filed the instant action, alleging that the finding
by USCIS regarding Plaintiff's eligibility to adjust his status
was arbitrary, capricious, and contrary to law.  Compl., Docket
No. 1, ¶ 9.

On March 26, 2008, Defendant issued a USCIS-internal
memorandum ordering review of certain cases decided after December
26, 2007, the date of the Consolidated Appropriations Act of 2008,

---

[1] The text of the letter is reproduced here verbatim,
including the spelling and punctuation found in the original.

United States District Court
For the Northern District of California

Pub. L. 110-161, 121 Stat. 1844 ("CAA").  Mot. Ex. B.  According

to the memorandum, the CAA expanded the authority of the Secretary

of Homeland Security to make exemptions to certain terrorism-

related grounds for inadmissibility as they relate to Tier III

organizations or to an individual alien.  <u>Id.</u>  As a result, USCIS

decided to place certain cases on hold and to reopen certain

denials where it appeared the case might benefit from an exercise

of the Secretary's expanded discretion.  <u>Id.</u>  On April 23, 2008,

USCIS notified Plaintiff that it had reopened his case:

> In accordance with 8 C.F.R. 103.5(a), USCIS
> determined that sufficient circumstances
> warrant reopening and/or reconsideration of
> the case, thereby vacating the previous denial
> decision.  However, at this time the record is
> not sufficient to establish eligibility for
> the benefit sought.  Therefore, the case has
> been reopened and placed on hold.  No further
> adjudicative action will be taken at this
> time.

FAC ¶ 11, Ex. H.

On August 12, 2008, the Court issued its Order Denying

Defendant's Motion to Dismiss and Granting Plaintiff's Cross-

Motion for Leave to Filed First Amended Complaint ("First MTD

Order").  Docket No. 30.  Plaintiff then filed the First Amended

Complaint, challenging the decision to place his application for

adjustment on hold, rather than the final denial of his

application.  <u>See</u> FAC.


**III. <u>JURISDICTION</u>**

The Government moves to dismiss Plaintiff's suit pursuant to

Federal Rule of Civil Procedure 12(b)(1), asserting that the Court

4

**United States District Court**
For the Northern District of California

1    lacks jurisdiction.

2         A.   **Legal Standard**

3         The Court may dismiss a complaint for lack of subject-matter

4    jurisdiction where the action (1) "does not 'arise under' the

5    Federal Constitution, laws or treaties (or fall within one of the

6    other enumerated categories of Art. III, § 2);" (2) "is not a

7    'case or controversy' within the meaning of that section;" or (3)

8    "is not one described by any jurisdictional statute." Baker v.

9    Carr, 369 U.S. 186, 198 (1962); see also Fed. R. Civ. P. 12(h)(3)

10   ("If the court determines at any time that it lacks subject-matter

11   jurisdiction, the court must dismiss the action.").

12        "Federal courts are courts of limited jurisdiction." United

13   States v. Marks, 530 F.3d 799, 810 (9th Cir. 2008). Plaintiff, as

14   the party seeking to invoke the jurisdiction of the Court, has

15   "the burden of proving the actual existence of subject matter

16   jurisdiction." Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir.

17   1996) (per curiam). Plaintiff asserts that jurisdiction is

18   appropriate under the Administrative Procedure Act ("APA"), 5

19   U.S.C. § 701 et seq. FAC ¶ 1.

20        "A Rule 12(b)(1) jurisdictional attack may be facial or

21   factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039

22   (9th Cir. 2004), cert. denied, 544 U.S. 1018 (2005). "In a facial

23   attack, the challenger asserts that the allegations contained in a

24   complaint are insufficient on their face to invoke federal

25   jurisdiction. By contrast, in a factual attack, the challenger

26   disputes the truth of the allegations that, by themselves, would

27   otherwise invoke federal jurisdiction." Id. In a factual

28

                                       5

challenge, the Court "need not presume the truthfulness of the plaintiffs' allegations." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). The instant challenge to the Court's jurisdiction is factual, as the Government has submitted documents and affidavits in support of its Motion.

**B.   Discussion**

The Government raises several challenges to the Court's jurisdiction, all based on different provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq.

1.   8 U.S.C. § 1252(g)

First, the Government argues that judicial review in this matter is precluded by 8 U.S.C. § 1252(g). Section 1252 provides as follows:

> (g) Exclusive jurisdiction. Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

8 U.S.C. § 1252(g). The Government says this provision applies to

6

the decision to place Plaintiff's application on hold, as that was an exercise of the Attorney General's discretion.  See Mot. at 4-7.  Plaintiff contends that the statute must be construed narrowly, and that the decision to put his application on hold is not the commencement of proceedings, the adjudication of his case, or the execution of a removal order against him, and therefore is not covered.  Opp'n at 3-4.

The Supreme Court has held that section 1252(g) must be interpreted narrowly.  See Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471 (1999) ("American-Arab").  In American-Arab, the Court ruled that section 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'"  Id. at 482 (quoting 8 U.S.C. § 1252(g) (emphasis in American-Arab).  In discussing the legislative history of the statute, the Court declared that, "It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."  Id.  The Court further noted that the three discrete actions in question "represent the initiation or prosecution of various stages in the deportation process."  Id. at 483.  Following American-Arab, the Ninth Circuit has construed section 1252(g) narrowly.  See Wong v. U.S. Immigration & Naturalization Serv., 373 F.3d 952, 964 (9th Cir. 2004).

With that narrow construction in mind, the Court turns to the question of whether section 1252(g) precludes judicial review in

7

this instance.  The Court concludes that it does not.  The Government has not taken any action towards removing Plaintiff. In fact, in arguing judicial involvement at this stage is premature, the Government asserts that Plaintiff may renew his application for adjustment of status in future removal proceedings pursuant to 12 C.F.R. § 1209.2(f).  Mot. at 6.  At present, however, Plaintiff is not subject to removal, and the Government has not initiated removal proceedings against him.  As Plaintiff is a lawful asylee, the Government cannot initiate removal proceedings at this time.  See 8 U.S.C. § 1158(c)(1)(A) (where an alien is granted asylum, the Attorney General shall not remove the alien to his or her country of origin).  On the existing record, removal is not an issue, and section 1252(g) is therefore not a bar to this Court's jurisdiction.  See Wong 373 F.3d at 965 (Plaintiff "is correct that § 1252(g) does not bar review of the actions that occurred prior to any decision to 'commence proceedings,' if any, against her or to execute the removal order"); see also Mitondo v. Mukasey, 523 F.3d 784, 787 (7th Cir. 2008) (statute precluding judicial review of removal determinations was inapplicable to an "asylum-only" proceeding); Liu v. Novak, 509 F. Supp. 2d 1, 7-8 (D.D.C. 2007) (section 1252(g) does not bar suit to compel adjudication of application to adjust status because suit does not involve any of the discretionary acts explicitly enumerated in the statute).

        2.   8 U.S.C. § 1252(a)(2)(B)(ii)

    The Government next argues that because final determinations on applications for adjustment of status are not subject to

8

judicial review, the Court lacks jurisdiction here.  <u>See</u> Mot. at

7-9.  Section 1252(a)(2)(B)(ii) provides in part:

> (B) Denials of discretionary relief.
> Notwithstanding any other provision of law
> (statutory or nonstatutory), . . . and
> regardless of whether the judgment, decision,
> or action is made in removal proceedings, no
> court shall have jurisdiction to review--
>
> . . .
>
> (ii) any other decision or action of the
> Attorney General or the Secretary of Homeland
> Security the authority for which is specified
> under this title to be in the discretion of
> the Attorney General or the Secretary of
> Homeland Security, other than the granting of
> relief under section 208(a).

8 U.S.C. § 1252(a)(2)(B)(ii).  The Government contends that

because the ultimate authority to grant adjustment of status is

discretionary, its decision to place Plaintiff's application on

hold is insulated from review.  Mot. at 8.  The Ninth Circuit has

identified two conditions that must be satisfied in order for an

action to be shielded from judicial review under section

1252(a)(2)(B)(ii).  "First, the language of § 1252(a)(2)(B)(ii)

requires that the discretionary authority be 'specified' under the

INA. . . . [T]hat is, the language of the statute in question must

provide the discretionary authority."  <u>Spencer Enters. v. United</u>

<u>States</u>, 345 F.3d 683, 690 (9th Cir. 2003).  Second, the authority

for the action in question must be in the discretion of the

Attorney General.  "If the authority for a particular act is in

the discretion of the Attorney General, therefore, the right or

power to act is entirely within his or her judgment or conscience.

Such acts are matters of pure discretion, rather than discretion

9

guided by legal standards." Id.  Only if both of those conditions are satisfied will review of the Attorney General's actions fall outside of the Court's jurisdiction.

The Government maintains that the decision to place Plaintiff's application on hold satisfies both conditions.  The authority to grant or deny an adjustment of status is clearly discretionary.  See Dong v. Chertoff, 513 F. Supp. 2d 1158, 1165 (N.D. Cal. 2007).  Moreover, this discretionary authority is clearly designated to the Attorney General by statute:

> The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum . . . .

8 U.S.C. § 1159(b).  The decision to grant an application for adjustment of status therefore satisfies the conditions of section 1252(a)(2)(B)(ii).  However, the decision Plaintiff asks the Court to review is not the grant or denial of his application for adjustment; rather, it is the refusal to take any action on that application.  The Government's own authority recognizes this distinction:

> Based on the narrow construction to be given the jurisdiction-stripping provision of the statute, and its language precisely limiting the discretion granted, the Court therefore finds that 8 U.S.C. § 1252(a)(2)(B)(ii) does not deprive the Court of jurisdiction to hear an allegation that the determination of an application for adjustment of status has been unlawfully withheld. While the ultimate decision to grant or deny an application for adjustment of status is unquestionably

10

United States District Court

For the Northern District of California

discretionary, there exists a
non-discretionary duty to act on and process
the application.

<u>Dong</u>, 513 F. Supp. 2d at 1165 (emphasis added).  Moreover, the
Government explicitly concedes that it has a nondiscretionary duty
to adjudicate Plaintiff's application within a reasonable amount
of time.  <u>See</u> Reply at 5 n.1.

Despite this concession, the Government proceeds to argue
that the Ninth Circuit's recent decision in <u>Hassan v. Chertoff</u>,
543 F.3d 564 (9th Cir. 2008), compels the application of section
1252(a)(2)(B)(ii) here.  Mot. at 7-8; Reply at 5-6.  The
Government relies heavily on the <u>Hassan</u> ruling that, "Because the
government denied Hassan's application for adjustment, <u>in</u> <u>part</u>, as
a matter of discretion, the district court lacked jurisdiction to
review that claim."  534 F.3d at 566 (emphasis added).  The
reliance is misplaced, as <u>Hassan</u> dealt with the denial of an
application for adjustment, an action which satisfies the <u>Spencer</u>
<u>Enterprises</u> conditions for preclusion of review, not the decision
to take no action.  Nothing in <u>Hassan</u> expands the scope of
discretionary actions protected by section 1252(a)(2)(B)(ii).  The
Government's reliance on <u>Hassan</u> was recently rejected in a nearly
identical case in this district:

The government seems to suggest that <u>Hassan</u>
set forth a rule that the courts have no
jurisdiction over any decision which is
discretionary even in part.  <u>Hassan</u> does not
control, because the plaintiff in that case
was challenging not a delay in acting on his
adjustment of status application, but rather
the denial of his application itself. See
[<u>Hassan</u>, 534 F.3d] at 565. Hassan sought an
opportunity to respond to the reasons for the
denial, and it is this over which the court

11

United States District Court
For the Northern District of California

1    found it did not have jurisdiction.

2    Ahmed v. Scharfen, No. 08-1680, 2009 U.S. Dist LEXIS 591, at *18

3    (N.D. Cal. Jan. 7, 2009).  The Court agrees with the conclusion in

4    Ahmed.

5         3.    8 U.S.C. § 1159(b)

6         The Government also argues that the statute requiring

7    adjudication of applications for adjustment does not specify a

8    period of time in which the adjudication must occur.  Mot. at 10-

9    11.  The Court has previously rejected this precise argument both

10   in this case and in prior cases.[2]  See First MTD Order at 3;

11   Soneji v. U.S. Dep't of Homeland Sec., 525 F. Supp. 2d 1151, 1155-

12   56 (N.D. Cal. 2007); Chen v. U.S. Citizenship & Immigration Serv.,

13   No. 07-2462, 2007 U.S. Dist. LEXIS 95409, at *3 (N.D. Cal. Dec.

14   18, 2007).  The courts in this district have resoundingly agreed

15   with that conclusion.  See, e.g., Ahmed, 2009 U.S. Dist LEXIS 591,

16   at *19-20; Dong, 513 F. Supp. 2d at 1167-68; Singh v. Still, 470

17   F. Supp. 2d 1064, 1067 (N.D. Cal. 2007); Aboushaban v. Mueller,

18   No. 06-1280, 2006 U.S. Dist. LEXIS 81076, at *5 (N.D. Cal. Oct.

19   24, 2006); see also Dong, 513 F. Supp. 2d at 1163 n.7 (collecting

20   authority).

21        4.    8 U.S.C. § 1182(a)(3)(B)(i)

22        Finally, the Government contends that its decision, or

23   possible future decision, to exempt Plaintiff from inadmissibility

24   ───────────────

25   [2] The Government acknowledges the Court's prior ruling, but
     suggests that Hassan, which was decided after the Court ruled,
26   should alter the Court's analysis.  See Reply at 5 n.1.  The Court
     has already rejected the Government's argument on that issue.  The
     Government wishes to preserve this issue for appeal.  See Mot. at
27   10 n.7.  The record on appeal will speak for itself.

28                                    12

**United States District Court**
For the Northern District of California

under 8 U.S.C. § 1182(a)(3)(B)(i) is a discretionary act which is not subject to judicial review. Aliens who have engaged in terrorist activity are deemed inadmissible and ineligible to receive visas to enter the United States. See 8 U.S.C. § 1182(a)(3)(B)(i)(I). However, the Attorney General may make exceptions to this rule:

> The Secretary of State, after consultation with the Attorney General and the Secretary of Homeland Security, or the Secretary of Homeland Security, after consultation with the Secretary of State and the Attorney General, may determine in such Secretary's sole unreviewable discretion that subsection (a)(3)(B) shall not apply with respect to an alien within the scope of that subsection or that subsection (a)(3)(B)(vi)(III) shall not apply to a group within the scope of that subsection. . . . Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review such a determination or revocation except in a proceeding for review of a final order of removal pursuant to section 1252 of this title, and review shall be limited to the extent provided in section 1252(a)(2)(D).

Id. § 1182(d)(3)(B)(i). The Government asserts that because the decision whether or not to grant an exemption either for Jamaat-i-Islami as a group, or for Plaintiff as an individual, is beyond judicial review, the Court has no jurisdiction. The only authority the Government provides for this argument is section 1182(d)(3)(B)(i) itself. By its own language, the statute in question only precludes judicial review of exemptions to terrorism-related inadmissibility. Plaintiff does not challenge such an exemption. Plaintiff challenges the express decision of

**United States District Court**
For the Northern District of California

USCIS to place his application on hold.  Despite the Government's assertion to the contrary, nothing in the statute governing adjustment of an asylee's status, 8 U.S.C. § 1159(b), or the statute governing exemptions for terrorism-related inadmissibility, 8 U.S.C. § 1182(d)(3)(B)(i), vests the Secretary of Homeland Security or the Attorney General with the discretion to place applications for adjustment on indefinite hold without being subjected to judicial review.  That the decision whether or not to make an exemption for a terrorism-related inadmissibility determination is complicated and may involve significant national security concerns does not strip this Court of jurisdiction.

Because each of the jurisdictional challenges raised by the Government fails, the Court concludes that it has subject-matter jurisdiction and therefore DENIES the Government's Motion to Dismiss.

**IV.   SUMMARY JUDGMENT**

Having found subject-matter jurisdiction, the Court now turns to the merits of the parties' cross-motions for summary judgment.  The Government contends that there are no material issues of fact in dispute and that the delays in adjudicating Plaintiff's application are reasonable.  See Mot. at 15.  Plaintiff asserts that the delay is unfounded and unreasonable, and asks the Court to order USCIS to adjudicate his application promptly.

**A.   Legal Standard**

Entry of summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits

14

1   show that there is no genuine issue as to any material fact and

2   that the movant is entitled to judgment as a matter of law." Fed.

3   R. Civ. P. 56(c).  "Summary judgment should be granted where the

4   evidence is such that it would require a directed verdict for the

5   moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250

6   (1986).  Thus, "Rule 56(c) mandates the entry of summary judgment

7   . . . against a party who fails to make a showing sufficient to

8   establish the existence of an element essential to that party's

9   case, and on which that party will bear the burden of proof at

10  trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In

11  addition, entry of summary judgment in a party's favor is

12  appropriate when there are no material issues of fact as to the

13  essential elements of the party's claim.  Anderson, 477 U.S. at

14  247-49.

15      **B.   Discussion**

16      Plaintiff brought this suit under the APA.  The APA "permits

17  a citizen suit against an agency when an individual has suffered

18  'a legal wrong because of agency action' or has been 'adversely

19  affected or aggrieved by agency action within the meaning of a

20  relevant statute.'"  Rattlesnake Coalition v. U. S. Envtl. Prot.

21  Agency, 509 F.3d 1095, 1103 (9th Cir. 2007) (quoting 5 U.S.C. §

22  702).  The Court is authorized to "compel agency action unlawfully

23  withheld or unreasonably delayed."  5 U.S.C. § 706(1).  A

24  plaintiff seeking relief under section 706(1) must first show that

25  an agency delayed or withheld a discrete action that the agency

26  was legally required to take.  See Norton v. S. Utah Wilderness

27  Alliance, 542 U.S. 55, 64 (2004) ("a claim under § 706(1) can

28

United States District Court
For the Northern District of California

15

proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take") (emphasis in original). Second, a plaintiff invoking the APA must also show that the agency unreasonably delayed or unlawfully withheld processing its decision. See 5 U.S.C. § 555(b) ("with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it"); 5 U.S.C. § 706(1).

Here, the parties do not dispute that USCIS has delayed processing Plaintiff's application for adjustment of status. The Court has already concluded, as the Government conceded, that USCIS has a nondiscretionary duty to adjudicate Plaintiff's application within a reasonable period of time. See supra Section III.B.2; Reply at 5 n.1. The only question that remains for the Court, then, is whether the delay to date in adjudicating Plaintiff's application is reasonable.

The Court's determination of whether the delay is reasonable is guided by what are known as the "TRAC factors":

> (1) the time agencies take to make decisions must be governed by a "rule of reason"[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason [;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake [;] (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by the delay[;] and (6) the court

United States District Court
For the Northern District of California

16

> need not "find any impropriety lurking behind
> agency lassitude in order to hold that agency
> action is unreasonably delayed."

Independence Mining Co., Inc. v. Babbitt, 105 F.3d 502, 507 n.7 (9th Cir. 1997) (quoting Telecomms. Research & Action v. F.C.C., 750 F.2d 70, 79-80 (D.C. Cir. 1984)) (modifications in original). It is also relevant to "look to the source of the delay--e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." Singh, 470 F. Supp. 2d at 1068 (internal modifications omitted).

Application of the TRAC factors leads the Court to conclude that the delay in processing Plaintiff's application is not unreasonable. The statute governing applications for adjustment of status for asylees does not give any indication of the appropriate amount of time to process an application. See 8 U.S.C. § 1159(b). Nor does the statute authorizing the Secretary of Homeland Security to make exemptions to the terrorism-related inadmissibility rules. See 8 U.S.C. § 1182(d)(3)(B)(i). Thus, USCIS must process Plaintiff's application in a reasonable amount of time. See 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.").

"What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." Gelfer v. Chertoff, No. 06-6724, 2007 U.S. Dist. LEXIS 26466, at *5 (N.D. Cal. Mar. 27, 2007) (internal quotation marks omitted). Here, as the Government notes, the

17

**United States District Court**
For the Northern District of California

situation is distinguishable from the now-typical case involving a

delay in processing an applicant's FBI background check.  In many

of those cases, there are no facts specific to the applicant which

are causing the delay, or which implicate national security

concerns.  See, e.g., <u>Kousar v. Mueller</u>, 549 F. Supp. 2d 1194,

1199 (N.D. Cal. 2008) ("Although national security certainly

justifies a thorough name check process, there is no contention

that Plaintiff's application is particularly complex or any

evidence as to why the name check caused the application

processing to take far longer than the 180 days suggested by

Congress."); <u>Chen v. Chertoff</u>, No. 07-2816, 2008 U.S. Dist. LEXIS

4891, at *8-9 (N.D. Cal. Jan. 23, 2008) ("National security

interests and the complexity of the background check process can

only excuse reasonable delay.  Defendants have provided no

particularized facts to suggest that these concerns apply with

special force to Plaintiff's application or that her name check is

otherwise subject to special circumstances.").

Plaintiff has admitted to providing material support for

Jamaat-i-Islami, an organization that may qualify as a Tier III

terrorist organization.[3]  If the Government determines that

---

[3] Plaintiff argues that there has been no formal designation of Jamaat-i-Islami as a Tier III organization, and that absent such a designation, there is no basis for delaying his application.  The Court disagrees.  While Tier I and Tier II organizations must be designated as such by the Government, the plain language of the governing statute makes clear that no such designation is required for Tier III status.  <u>Compare</u> 8 U.S.C. § 1182(a)(3)(B)(vi)(I) <u>with</u> 8 U.S.C. § 1182(a)(3)(B)(vi)(III).  Moreover, the question of whether Jamaat-i-Islami actually qualifies as a Tier III organization is not before the Court and need not be answered for the Court to address the reasonableness of the delay.

**United States District Court**
For the Northern District of California

1   Jamaat-i-Islami is a Tier III organization, Plaintiff may face

2   removal unless either he or Jamaat-i-Islami is granted an

3   exemption by the Secretary of Homeland Security.[4]   The Government

4   contends that the determination of whether to grant such an

5   exemption is a complicated process, involving inter-agency

6   consultation.   One would hope such a determination is not made

7   lightly, and the Court recognizes that it may be time-consuming.

8        To date, Plaintiff's application has only been on hold for

9   approximately one year.   Plaintiff would have the Court consider

10  the entire time since he first applied for adjustment in 2003.   As

11  the Government already processed his original application,

12  however, the Court need only look at the time since the Government

13  reopened Plaintiff's case and put adjudication on hold.   In

14  reaching the original decision on Plaintiff's application, the

15  Secretary did not have the authority to make a terrorism-related

16  exemption.   As the exemption is the basis for the current hold

17  status on Plaintiff's application, it is reasonable for the Court

18  to focus on the period of time since the CAA was passed and the

19  possibility of exemption first arose.

20       Moreover, the delay in adjudication appears to favor

21  Plaintiff.   The Government previously determined that he was

22  inadmissible.   While it did not revoke his asylum, it could have

23  done so based on that determination, or based on the facts

24

25       [4] Plaintiff is correct that he does not currently face
    removal, as his asylum has not been revoked.   See supra Section
26  III.B.1.   While that was sufficient for a determination regarding
    the Court's subject-matter jurisdiction, it carries less weight in
27  consideration of the reasonableness of the delay at issue.

28

United States District Court
For the Northern District of California

underlying that determination.  See 8 U.S.C. § 1158(b)(2)(A)(v), (c)(2)(B).  The facts supporting Plaintiff's application for adjustment of status have not changed.  The only thing that has changed since Plaintiff first applied for adjustment is the CAA's grant of exemption authority to the Secretary of Homeland Security.  Absent that change, Plaintiff would have a final and unreviewable determination that he is inadmissible and not eligible for adjustment of status.  His arguments that further delay is a greater prejudice than that determination are unpersuasive.  The administrative hurdles Plaintiff may face in acquiring work and travel permits during the adjudication are minimal when the alternative is removal and termination of his asylum.

Finally, the Court finds no impropriety on the part of the Government here.  To the contrary, the reopening of Plaintiff's application in consideration of a possible exemption from terrorism-related inadmissibility appears to be an act of good faith.

For all of the foregoing reasons, the Court concludes that the delay in adjudication of Plaintiff's application for adjustment of status is reasonable.  The Court therefore GRANTS the Government's Motion and DENIES Plaintiff's Cross-Motion.

**V.   CONCLUSION**

For the foregoing reasons the Court finds that it has jurisdiction over this matter, and therefore DENIES the Government's Motion to Dismiss.  Having jurisdiction, the Court

20

considers the merits of the dispute and concludes that the delay in processing Plaintiff's application for adjustment of status is not unreasonable.   The Court therefore GRANTS the Government's Motion for Summary Judgment and DENIES Plaintiff's Cross-Motion for Summary Judgment.

      IT IS SO ORDERED.

      Dated: April 06, 2009                

                                       UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California